(No. 21557.—

THE ILLINOIS VALLEY BANK, *vs.* EDNA S. NEWMAN *et al.* Plaintiffs in Error.—(THE GRIGGSVILLE STATE BANK *et al.* Defendants in Error.)

*Opinion filed February 23, 1933.*

NOAH GULLETT, and HOOPES & PEFFERLE, for plaintiffs in error.

WILLIAM and BARRY MUMFORD, for defendants in error.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

The Illinois Valley Bank on May 20, 1926, filed in the circuit court of Pike county its bill in chancery against plaintiffs in error and Edd Newman to set aside a deed made by Newman to plaintiffs in error, on the ground that the deed was in fraud of the rights of the Illinois Valley Bank, a judgment creditor of Newman. On the same day the

bank filed in the cause an affidavit of Fred H. Farand, the cashier of the bank, in proper form, stating that all of the defendants except Newman were non-residents of the State of Illinois and that they resided at and the post-office of each was St. Petersburg, Florida. The affidavit further stated, in substance, that Newman was not a resident of the State of Illinois, and that affiant had made diligent inquiry to learn his place of residence and had been unable to ascertain the same, and that his last known place of residence was àt Griggsville, Illinois. At the time the affidavit was filed it was too late to get service by publication for the June, 1926, term of the circuit court but no effort was made to get service by publication for the November term of that court. On March 2, 1927, the clerk of the circuit court of Pike county prepared and signed a notice of the pendency of the suit and commanded the defendants to appear at the April, 1927, term, on the second Monday in April. No certificate of the publisher of the paper was filed showing when and how long the notice was published and there is nothing in the record to show when the first publication was made. The clerk of the circuit court made the proper certificate that on the 10th day of March, 1927, he sent a copy of the publication notice to the defendants other than Newman, addressed to them at St. Petersburg, Florida, and as to Newman, addressed to him at Griggsville, Illinois.

On June 11, 1927, the circuit court entered an order appointing L. T. Graham guardian *ad litem* for the infant defendants, Charles B. Newman, Jr., Gerald E. Newman and Clifford W. Newman. The record does not show the entry of an order appointing a guardian *ad litem* for the infant defendant Clarence F. Newman. On June 11, 1927, Graham, guardian *ad litem* for Gerald E. and Clifford W. Newman, filed an answer neither admitting nor denying the allegations of the bill and praying strict proof. He did not file any answer for the infant defendant Charles B.

Newman, Jr., but filed an answer for Charles B. Newman, who was not a party to the suit. He filed an answer on behalf of the infant defendant Clarence F. Newman, although he was not appointed guardian *ad litem* for him and no other person was appointed guardian *ad litem* for him. From the above recitals it is evident that no issue was made in the pleadings as to Charles B. Newman, Jr., and Clarence F. Newman.

The court heard evidence and entered a decree, in which it found, among other things, that a notice of the filing of a bill had been published "at least once in each week for four successive weeks, the first publication thereof having been made on the...... day of March, 1927, and at least thirty days have intervened between the first publication of notice and the first day of the present term of this court;" that "the defendant Edd Newman was the owner in fee simple of the following real estate, to-wit, [describing the property described in the bill of complaint,] subject to the life estate of his father, Charles B. Newman;" that the Illinois Valley Bank was a judgment creditor, and that the deed mentioned in the bill as made by Newman was in fraud of his creditors, and particularly of the bank. The decree granted all the relief prayed for in the bill and ordered the deed of conveyance mentioned in the bill to be set aside as to the bank. To review this record plaintiffs in error have sued out a writ of error from this court.

The Illinois Valley Bank was a defendant in error to this writ of error, and afterwards, on motion of plaintiffs in error, the two present defendants in error, the Griggsville State Bank and H. G. Miller, receiver, were substituted by this court, based on an affidavit filed which showed that the present defendants in error had succeeded to the assets and liabilities of the Illinois Valley Bank, and that said bank had ceased to do business.

It is claimed by plaintiffs in error that the publication notice was insufficient to confer jurisdiction on the court

over the persons of plaintiffs in error, in that the affidavit on which it was based was sworn to on the 19th of May, 1926, and, while it does not appear from the record when the first newspaper publication was made, it appears from a notation at the top of the notice that the first publication could not have been prior to March 9, 1927. A party claiming the benefit of a decree upon constructive service must show a strict compliance with every requirement of the statute, and nothing else will invest the court with jurisdiction or give validity to a decree when the same is called in question in a direct proceeding. (*People* v. *Abraham,* 295 Ill. 582; *Boyland* v. *Boyland,* 18 id. 551.) The affidavit upon which service by publication is had under the provisions of the Chancery act is jurisdictional and there must be a strict compliance with the statute. (*Anderson* v. *Anderson,* 229 Ill. 538.) Section 12 of the Chancery act is substantially the same as section 8 of the act of 1845, which was in effect in 1857 and which was under consideration in *Campbell* v. *McCahan,* 41 Ill. 45. In that case, where the affidavit of non-residence was filed twenty days before the order for publication was made, it was insisted that the affidavit was insufficient to prove that the defendants were non-residents at the time of the publication, and that for that reason the clerk was not authorized to make publication and that the court had no jurisdiction to enter the decree. What is there said is so pertinent to the facts of this case that we quote *in extenso* therefrom:

"The eighth section of the chapter entitled 'Chancery,' under which this proceeding was had, is silent as to the time when the affidavit must be made. Whether simultaneously with the order of publication or prior to the making of the order is not declared. It simply provides that whenever any complainant shall file the requisite affidavit in the office of the clerk of the court in which the suit is pending he shall cause publication to be made. This, then, involves the necessity of giving a construction to this clause

of the section. In terms it only requires the suit to be pending to authorize the proper affidavit to be filed and the order and publication to be made. The object which the legislature had in view, when ascertained, must be regarded and carried into effect. Our courts being powerless to send their process beyond the limits of the State and the legislature being unable to confer the power, to prevent a failure of justice in many cases it became necessary that some species of constructive notice should be adopted that the property of persons beyond the limits of the State might be rendered amenable to the process of our courts and justice thus administered to our citizens having demands against non-residents. Hence the adoption of this provision, which was designed, so far as may be necessary, to take the place of actual service. And to give effect to that intention the act must receive a fair and reasonable construction. This law being remedial in its character, it must, according to the canons of interpretation, be liberally construed so as to promote the remedy sought. It would therefore seem, under a liberal construction, not to be essential that the affidavit should be sworn to and the order of publication made simultaneously with the filing of the bill. It would be sufficient if filed in a reasonable time. If the affidavit were made years, or even months, before the order of publication the time would be unreasonable. It may be difficult to determine what is a reasonable time within which the affidavit must be filed after it is sworn to, but that must depend on the circumstances of each case. Where the person making the affidavit resides in the county in which the suit is pending, a shorter delay would be allowed than where he resided and made the affidavit in a different but adjoining county, and in the latter less than if he resided and swears to the facts in another State. In such a case a reasonable time would be allowed within which to transmit the affidavit to the place where it is to be used. If both acts are required to be performed, in all

cases, on the same day, it would, in practice, work great inconvenience in many instances, and in some great injustice. Nor is it believed that this section has, in practice, received so strict a construction, as it is believed that reasonable time has generally been allowed to file the affidavit after it has been made. But it seems obvious that twenty days is an unreasonable time to be allowed to transmit such an instrument from an adjoining county. A few days, at most, with slight effort, is only required for such a purpose. Allowing for the irregularity of the post or delays of messengers sent for the purpose no such a period of time could be required, and where it has occurred it indicates either a want of effort in sending it or inattention in filing it with the clerk. This affidavit, then, was made too long before it was filed to authorize the publication, and the law not having been complied with in this respect the publication was unwarranted, and being so, it failed to give the court jurisdiction of the person of the defendants. The jurisdiction of both the subject matter and of the person is essential to the validity and binding force of a judicial sentence. If either of these jurisdictional facts is wanting then the sentence or decree of the court is void. In such a case the whole proceeding is *coram non judice,* and it may be successfully resisted in that or any other court, in a direct or collateral proceeding."

The publication of the notice in March, 1927, was not made within a reasonable time after the filing of the affidavit of non-residence on May 20, 1926, and by reason thereof the circuit court did not acquire jurisdiction over the persons of either Edd Newman or plaintiffs in error.

The decree of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*